Good morning, Your Honors. May it please the Court, Greg Schweigman on behalf of Chinacast Education Corporation. So we're here today on a slightly less heady issue than the previous case. They're all important. That's right. They are. We're here today on the proper application of the California Borrowing Statute, Section 361 of the California Code of Civil Procedure. Specifically, our claim is that the District Court below erred in applying the borrowing statute to Chinacast's claims for unjust enrichment, money hadn't received, and conversion. Do you treat all of them as torts? Good question. She only asks good questions. Not only. But this one seems fair. What do you think? No, I think that it's not a question that's clearly answered in the case law. I'll say that. Money hadn't received seems to be a common count under the California rules, under California law. Conversion seems to be a tort. And I would say unjust enrichment, it's difficult to characterize that as a tort. It's a claim in equity. But I would say, generally speaking, these three types of claims are claims in equity. I want to know what statute of limitations you're going to apply. And so, for purposes of this argument, when you say claims in equity, I'm not sure you're really answering my question. Fair enough. I think that the statute of limitations that are going to apply to each of these claims are the – well, our argument is that it should be the – so let me back up. First, with respect to the California borrowing statute, the question is, what statute of limitations apply in Hong Kong versus – or China versus California? But we have to know what the cause of action is. Right. So these causes of action in Hong Kong, all three of these causes of action have a six-year statute of limitations. These causes of action in China have a two-year statute of limitations. That's what I need to know for purposes of my notes. So, all right. Does that answer your question? I have a question. Yes, ma'am. Having spent a lot of time in China, I thought there was only one China, two systems. So when I read CCP 361, when a cause of action has arisen in another state or in a foreign country, we don't have a foreign country, do we? Well, we have a foreign jurisdiction, for sure. That's for sure, the two systems, but – In Hong Kong, that has a separate – The statute says, or in a foreign country. How do we apply that to this case? Well, I suppose it would apply in that it did happen. The claims arose, under our view of the case, in a foreign country. And in that foreign country's jurisdiction of Hong Kong, the limitations are six years. All right. Does that make sense? Well, I'm not sure I understand, but proceed. Well, I want you to understand, within the context of the foreign country, the foreign country has – there's not one statute of limitations that applies to all actions in China, when, as you refer to it, as one country, two systems. So under one system, you've got a two-year statute. Correct. Under another system, you've got a six-year statute? Correct. But it happened in a foreign country. The claims arose in a foreign country. All right. So we have to figure out when and where the cause of action really accrued, right? That's right. Forgive me for cutting to the chase. No, please do. Your time is ticking, and so what is your response to that? I think that that's exactly right. I think that is the – that's the right question. That's the legal standard that everyone – that California courts apply. And the answer to that question is, well, when you – to apply that, you have to look at where the underlying – where the events underlying the cause of action occurred, or where the elements of the cause of action occurred. That's the part I know. That was in my question. So where did the conversion claim arise? When and where was there a claim for conversion? Please. All right. So can I step back to the elements of the claim of conversion to answer that question? So the elements of the claim of conversion is essentially the wrongful disposition of a property right of the plan. That wrongful disposition of the property right in this case happened in Hong Kong. That wrongful disposition was the sale of the stock that was wrongfully received by the defendants. Let me do it this way because your time is ticking. Here's my problem. I think the district court thought that the cause of action accrued when the deposit bounced in and out of a bank account. That's correct. Called it a round-trip deposit, I think. That's correct. Okay, and that was in a bank account that was in China, right? That's correct. But that round-trip deposit happened before the stock certificates were even issued. So if the action had stopped on the day when the round-trip transactions occurred, would Chinacast have had a claim? They hadn't parted with their stock yet. That's correct. So we don't have any of these claims against any unjust enrichment, any money hadn't received, any conversion until the stocks are actually sold in Hong Kong. Sold or certificates delivered? Sold. So what date are you using? I'm using the date the stocks were sold in December 2012. I'm sorry, December 2010. That's when they actually received a benefit. The damages or the amount of money we're seeking under this lawsuit are the $17 million that defendants received, the benefit that they received from selling the stock. The district court thought that the deposition testimony, that the stock certificates were delivered in Hong Kong, forgive me, China, was uncontested. I would say that we don't have any evidence to suggest that, other than the credibility of Mr. Chin's testimony, that that happened, that that did not happen. But I'll say this. Well, don't you have an indication in the form of written evidence of the stock certificates? Oh, absolutely. Absolutely. Because we don't do credibility determinations up here. Right, right. So absolutely there is specific evidence that the stocks were delivered to an address in Hong Kong. They were registered to an address in Hong Kong. What we don't have is any evidence to refute Mr. Chin's testimony that Mr. Chin, Chinacast's former CEO, physically delivered the stock certificates in China to Mr. Chin. And forgive me, but is it your contention that the delivery was the point at which the causes of action accrued? No. Okay. My contention is the causes of action accrued when the defendants received and retained the benefit of the proceeds from the sale of that stock. We don't have a cause of action until the defendant receives a benefit. That benefit is the proceeds. I don't have a number to attach. Why isn't it the stock certificates? Well, there's two reasons. Why isn't delivery of the stock certificates? Forgive me. Okay. Well, there's two reasons for that. One, as far as the delivery of the stock certificates in China, there's at least California case law that states that, excuse me, that the certificates themselves are not the shares. It's just the evidence of the receipts of the shares. So, for example, let's say I have dinner here in Pasadena, and I have the waiter send my receipt to my home in Texas. Did I receive the benefit when I got the receipt, or did I receive the benefit of the meal when I ate it here in Pasadena? It's the same sort of concept with certificates. They're just receipts of the shares having been transferred. So it doesn't matter. The benefit's not received when they have the certificates. Second, if the certificates were physically received in China, that's sort of irrelevant as well, because in China, as Mr. Chen testified, he can't do anything with those certificates. It seems to me your argument then would be that even if the round-trip deposits had occurred and the stock certificates had been delivered, if they had never been sold, a cause of action would never have accrued. It would be difficult to – I will state it this way. I don't have to worry about that because that's not what happened. We have to worry about having a cogent theory. I'm going to get to that. Okay. I would say it this way. It would be difficult to articulate the amount. My claim is to basically call back the amounts they unjustly benefited. You wouldn't be able to quantify your damages? That's right. It would be difficult to quantify. Okay. So my other point on the stock certificates is, well, as I was saying, is that if just receipt of the stock certificates in China, Mr. Chen testified, he could not do anything with those stock certificates. He had to get them out of China to sell them, to benefit from them. So in China, those stock certificates are worthless pieces of paper. In Hong Kong, they are evidence that he owns some stock that he can sell, which is what he did and from which he benefited unjustly in our opinion. I guess I'm curious. Is this the kind of case that we might certify to the California Supreme Court because there's so little authority on this? What specific issue are you referring to? Is it where the claim accrued? Yes. I don't think it's necessary for two reasons to certify this to the California Supreme Court. One is, neither side in the court, although the California Supreme Court has clearly not discussed what's the proper method for determining where a claim accrues, there are no California cases that anyone has cited that clearly say, okay, you look at where the injury is instead of when and where the elements of the cause of action happened. Defendants cite one case where they vaguely make a reference to the Seventh Circuit standard, which under that case they're talking about where the injury occurred. But when you read the facts of that case, it's the Bank of India case, it's not clear that the court is looking to where the injury occurred to determine where the cause of action accrued. Second, under California law, what is absolutely clear is where the injury accrued is the least important, I'm sorry, where the injury happened is the least important thing to determine when a cause of action accrued. So why would it be any different for where? And what I mean by that is California courts is clear that it's when the underlying conduct happens, that's when the cause of action accrues. It doesn't matter if an injury has occurred yet. It happens when the action happens, not when the injury happens. Are there more questions? Would you like to preserve the remainder of your time? Good morning, Your Honors. Thank you for your time and consideration. And I appreciate the point, Your Honor, that this is important. My clients have had a $17 million lawsuit hanging over their head for quite some time. It's very important to them. They're new to the United States. They're learning English. They still don't understand English, and they don't understand the United States justice system. So this is an important appeal to us. And I think, and I said this to the district court, and I still think it still resonates, that I would not be here today, Mr. Schweigman would not be here today, and we'd have no lawsuit today if there had not been that round-trip transaction. But just having had that round-trip transaction, I've looked at the record very carefully. There's the email that says, we got the deposits. They were received yesterday. Please issue the stock certificates. So as of the time the round-trip transactions had happened, again, if the action stopped then, I don't think there would be a claim, right? There wouldn't have been a damage. There would not have been any kind of cause of action. It would have stopped. It's a bounced check, right? Okay, but once they part with whatever it is they're selling, then we can start talking about conversion, right? And so that has to be later. I'm trying to get at whether that isn't a bobble in the district court's reasoning. Yeah, and I don't think so because, well, first of all, if we just accept the argument that they're making that it was a conversion and it was stock that they got, right? That's how they pleaded in their complaint. They got stock. Then that's fine. Okay, then the wrongful act was when you exercised dominion and control over the stock. I mean, that is the definition of conversion. And if it's unjust enrichment, it's when you unjustly benefited something. Well, under what they're saying, that happened as soon as he got the stock, right? And they're saying, well, it doesn't really matter because you can sell it until you went off to Hong Kong or something. Well, wait a second. Stock's not just that, right? It gives you rights to vote in a company. It gives you rights to exercise a proxy. So did the cause of action accrue when the stock certificates were delivered and we just have to figure out when and where that happened? That's, I think, very simply, yes. Okay, so when did that happen? The district court thought that that happened on mainland China. So that deposition testimony was uncontested. I think it is uncontested. But in the sense that there isn't any competing testimony, but it's, I think, relying on the written documentation that indicated delivery was to be taken in Hong Kong. Why is that wrong? Why is that about the delivery? Why isn't it an issue of fact? It's not an issue of fact, first of all, because the document, first of all, was prepared by ChinaCast. And number two, the fact that it has an address doesn't indicate delivery. Well, but they're both self-serving. The defendant's testimony, of course, and I'm not casting aspersions, I'm just saying that is certainly testimony that would be self-serving as to his client's position. And the other, the written indication is also consistent with plaintiff's theory. So why don't we have a contested issue there? Because, and it's not contested. Well, number one, because, again, there's no delivery of the certificate shown by the address. I mean, it doesn't show that it was delivered. But it gives reason to doubt the only testimony that we've got, which is certainly, at a minimum, self-serving. Right. Yeah, it's self-serving, but at the same time, it's something that they could have rooted out otherwise, either through Ron Chan or somebody else. I guess he's flown the coop or he's lost in China somewhere. But there's other people that, you know, there's other ways to track stock transfers. But I think also you have to look at what the address is that's on that stock certificate as they cite in their complaint. That was the address that was used. This is on ER-233. And they allege in paragraph 22 that, gee, this flat C, the very flat C-16-F, Hamilton Commercial Building, 558 Nathan Road, Kowloon, Hong Kong is an address that was used by Ron Chan. ChinaCast knows that address was used by Ron Chan. It's got no connection to my client at all, other than the fact there's a stock certificate that was given to him in the That's the only connection that they can even offer from my client to this address in Hong Kong. I just don't think that that's a material dispute to my unchallenged testimony that I got the stock certificates from Mr. Chan in China, which, by the way, isn't really a shock. My client lived in China. The school he operated was in China. Ron Chan was operating ChinaCast in China. I mean, everything about this case is in China, except the actual sale of the stock on the market. Which is what the case is about. Yeah. So there certainly are contacts to Hong Kong. I get it. And that's what we're trying to parse. I get it. But my point is that you don't need the sale of stock to have a cause of action for what they're saying. Well, but that's why I asked you about is your theory delivery, that the causes of action accrued at the time of delivery? And I think you answered yes. And so then I asked, well, so do we have to figure out when and where that happened? And I think you answered yes. And that's what we're talking about. Is there a genuine issue of fact, a genuine dispute, about Hong Kong delivery versus China delivery? And is your best argument what? That the testimony is uncontested and you think the other evidence just doesn't rise to the level? The testimony is uncontested. And that document evidence that they're talking about really isn't evidence of delivery. It's a software with an address on it. Is there any other conflicting evidence? As far as Hong Kong is concerned? About where the delivery occurred? Not that I'm aware of, Your Honor. It wasn't a trick question. This is your last chance to the microphone, so I wonder if you have a shot. I'm thinking about it, and I think if I had it in there, it would be in there. I didn't put it in there. All right. I've asked too many questions. Let me see if my colleagues have questions. I guess not. I just wanted to see if there was anything else I wanted to add on top. Sure. Take your time. Take your time. Because your question is sort of incorporated. But I think I just want to point out, because it's not just a conversion, and I think that in terms of when you asked the question about what kind of cause of action and what statute of limitation, I think the closest for something like money had or received and something like unjust enrichment would be a tort, right? Because you need some sort of wrongful conduct to have a money had or received cause of action. It can't just be I have money. You have my money. I think I should have it. You need something like unequitable conduct or some sort of lack of conscience or something. I think it's cited in a case, Raines v. Arnett, is what that element is. Unjust enrichment means you need something unjust. There's got to be some sort of wrongful conduct that gets you that thing that you got enriched by. So I think it really is you're looking at sort of tort causes of action to look at where the conduct is that where this cause of action arose. And I think that might be all I have, Your Honor, unless there's further questions. No, your argument was very helpful. Thank you. Thank you for your time. So I just want to make one quick final point, Your Honors. For the elements of each of these causes of action that are pleaded, the gravamen is two things. One is not only the receipt, but it's also the retention of the benefit. The benefit here you can articulate in terms of the shares. You can articulate in terms of the amount of money received from the sale of those shares. That's the way we prefer to discuss it because it's the cleanest way to look at it. But that said, the facts that are related to both the adult, the court seems to be focused on the receipt, and I want to also make the point that the retention is also part of this. It's not only that where you got it, where you kept it. But we have to figure out when the clock starts. So we're looking at when the cause of action accrued. Right. Well, that's true. So the retention isn't what I'm focused on. That's why I'm focusing on when did the claim arise. Do you think we're missing something by not including in our analysis  I think that's part of the elements. So, for example, they may happen at the same time. But, for example, on a money hadn't received, the issue is not only that a defendant received the plaintiff's money, it's that he didn't return it or use it for his benefit. Right. He had to have kept it. There's another step that has to do it. Now that's a tacit step, I get. But I just wanted to point out that each of the facts, and this goes, just to be clear, I think the bullet point list is helpful, that the shares were registered to an address in Hong Kong, and they were never paid for. And just on that point, to respond to the judge below, the court below, is you don't not pay for something anywhere. Right. What? I'm sorry. Right. I know. It's a confusing concept. Let me just flesh it out. You're talking about action omission. This is the failure to pay. Right. The failure to pay didn't happen in China. It didn't happen in Hong Kong. It didn't happen anywhere. So you can't put a location. As the court, I think part of its bubble in reasoning was that, trying to put a location in China where the wrongful act of not paying didn't occur. Does that make sense? But, anyway, the shares were sent to an address in Hong Kong. They were deposited in a brokerage account in Hong Kong.  The proceeds from that sale were kept in that brokerage account in Hong Kong, and then transferred to a bank account in Hong Kong. None of this happened in China. If the stock certificates had been delivered on day one, and the round-trip transactions had occurred on day two, would the cause of action arise on day two? No. The round-trip deposits have nothing to do with our cause of actions. The round-trip deposits were the cover-up. It wasn't a payment. So, counsel, you're over time. My question is just, in that scenario, that hypothetical, when would the cause of action have accrued? The cause of action accrues upon when the defendant received the benefit of the stocks. Counsel, so what's the answer to the question? My hypothetical is on day one, the certificates are delivered, which did not happen in this case, but just go with me if you would, and then on day two there's a round-trip transaction to pay for them under that scenario. When does the cause of action accrue? Day one. Okay, thank you. Thank you both very much for your arguments. Take care.
judges: D.W. Nelson, Christen, Shea